IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50952
_____

WASTE CONTROL SPECIALISTS, LLC,

Plaintiff-Appellant,

versus

ENVIROCARE OF TEXAS, INC.; ET AL.,

Defendants,

ENVIROCARE OF TEXAS, INC;
ENVIROCARE OF UTAH, INC.;
KHOSROW B. SEMNANI;
CHARLES A. JUDD; FRANK C. THORLEY,

Defendants-Appellees.
_____

Appeal from the United States District Court for the
Western District of Texas, Midland
_____

January 18, 2000

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The issues presented in this appeal are, first, whether the district court erred in failing to remand this antitrust and business tort case to the state court by concluding that the complaint fell within the artful pleading doctrine and, second, whether the plaintiff waived its right to challenge federal jurisdiction because, after its efforts to remand had failed, it amended its complaint to state a federal claim.

I

The dispute between the appellant, Waste Control Specialists, L.L.C. ("WCS"), and the appellees, Envirocare of Texas, Inc., *et al.* (collectively, "Envirocare"), revolves around WCS's bid to enter the market for disposal of low-level radioactive and mixed waste.

WCS brought this suit against Envirocare in Texas state court alleging that "Envirocare conceived and implemented a plan to destroy WCS' ability to compete in the low-level radioactive and mixed waste business." WCS pled exclusively state law causes of action. They ranged from allegations of violation of the Texas Free Enterprise and Antitrust Act of 1993, Tex. Bus. & Com. Code § 15.05(b) (1987) ("Texas Antitrust Act"), to business tort claims. Specifically, WCS alleged that Envirocare used its monopoly position improperly to prevent WCS from obtaining the approval of the state of Texas for its project. The alleged impropriety turned, first, on allegations of false and defamatory communications to state regulatory officials regarding the WCS project. Second, WCS charged that Envirocare engaged in a sham effort to create a competing facility in Andrews County, Texas. WCS alleged that the sole purpose of this effort in Andrews County was to incite a backlash against WCS based on citizen fear of that county becoming a toxic dumping ground. Naturally, Envirocare denied those allegations. Additionally, Envirocare raised the Noerr-Pennington affirmative defense, i.e., that these activities

2

were immune from suit because efforts to influence public officials cannot violate antitrust laws.

Ten months after filing its original state petition, WCS filed an amended petition, apparently restricting its allegations to the non-commercial waste market--a market with only one consumer of disposal services, i.e., the only generator of non-commercial waste, the United States Department of Energy. At that point, Envirocare removed the action to federal district court. It asserted that, because the only customer for non-commercial waste market is the federal government, the single viable claim propounded by WCS must be based on federal antitrust law, notwithstanding that WCS's complaint made no reference to any federal law.

The district court agreed and, asserting the artful pleading doctrine, denied WCS's motion to remand. In filing its motion to remand, WCS objected strenuously to what it considered Envirocare's improper removal. It also filed a motion to reconsider the order denying remand. After its unsuccessful efforts to have the case remanded, WCS faced Envirocare's motion to dismiss. The district court strongly suggested that WCS's only potentially viable claim was a federal one. Accordingly, WCS amended its complaint expressly to allege a violation of the Sherman Act. Despite this amendment, on Envirocare's Fed. R. Civ. P. 12(b)(6) motion, the district court dismissed WCS's complaint, reasoning that

3

Envirocare's activities were protected under the <u>Noerr</u>-<u>Pennington</u> doctrine.[1]

II

We review *de novo* denials of motions to remand.  <u>See</u> <u>Carpenter v. Wichita Falls Indep. Sch. Dist.</u>, 44 F.3d 362, 365 (5th Cir. 1995).  The district court rejected WCS's motion to remand on the basis that the artful pleading doctrine applied.  The court reached this conclusion notwithstanding the fact that the Sherman Act does not completely preempt the Texas Antitrust Act.  The district court recognized that WCS's claim under the Texas Antitrust Act was not one subject to complete federal preemption.  Indeed, the district

---

[1]We have explained this doctrine as follows:

> The <u>Noerr</u>-<u>Pennington</u> doctrine "allows individuals or businesses to petition the government, free of the threat of antitrust liability, for action that may have anti-competitive consequences. <u>Noerr</u>-<u>Pennington</u> protection is grounded on the theory that the right to petition guaranteed by the First Amendment extends to petitions for selfish, even anticompetitive ends." <u>Greenwood Utilities Comm'n v. Mississippi Power Co.</u>, 751 F.2d 1484, 1497 (5th Cir. 1985).  The doctrine was announced in <u>Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), where the Supreme Court held that the Sherman Anti-Trust Act did not bar an association of railroad companies from seeking legislation and regulations destructive of the trucking industry.  The Court has expanded this holding to encompass the petitioning of other public officials besides legislators. <u>See</u> <u>United Mine Workers of America v. Pennington</u>, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); <u>Real Estate Investors v. Columbia Pictures</u>, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

<u>Brown & Root, Inc. v. Louisiana State AFL-CIO</u>, 10 F.3d 316, 325 (5th Cir. 1994).

court explicitly noted that federal antitrust law does not preempt Texas' antitrust law. See Pounds Photographic Labs, Inc. v. Noritsu America Corp., 818 F.2d 1219, 1226 (5th Cir. 1987). The district court held, however, that the Texas Antitrust Act was not applicable on the facts. The district court interpreted the Texas Act not to apply to actions that are wholly interstate in nature, and it found that WCS could not establish a Texas antitrust action because of the wholly interstate, or non-intrastate, nature of the federal government's waste disposal market. Although not expressly saying so, the district court's order clearly hinted that WCS's only possible claim was a federal one. Indeed, in a footnote, the order states that it "does not address the merits of the Plaintiff's federal antitrust claim," although WCS had not alleged that cause of action. Based on this conclusion that a federal claim effectively had been alleged, the court decided that it had subject matter jurisdiction.

The district court's decision regarding the viability of WCS's allegations appears to have been one the district court had no jurisdiction to make. Without complete preemption, the artful pleading doctrine does not apply. If this was once a matter of debate, the Supreme Court recently has put the issue to rest. See Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 118 S.Ct. 921, 925 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim. . . . Although federal preemption is ordinarily a defense,

5

once an area of state law has been completely considered, any claim purportedly based on that pre-empted state law claim is considered, from its inception, a federal claim, and therefore arises under federal law.")(citations and internal quotation marks omitted). See also Caterpillar, Inc. v. Williams, 482 U.S. 386, 397 n.11 (1987) ("Although 'occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, most [courts] correctly confine this practice to areas of the law pre-empted by federal substantive law.") (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 410 (1981) (Brennan, J., dissenting)). Indeed, even prior to Rivet, this was the rule in this circuit and others. See Avitts v. Amoco Prod. Co., 53 F.3d 690, 693 (5th Cir. 1995) ("[W]hen both federal and state remedies are available, plaintiff's election to proceed exclusively under state law does not give rise to federal jurisdiction. In the present case, there is no doubt that Appellees have chosen to pursue only state law causes of action. . . . The district court had no jurisdiction over the subject matter . . . ."). See also James W. Moore, MOORE'S FEDERAL PRACTICE § 107.14[3][b][iv], p. 107.86.2-86.3 & n.184.1 (3d ed. 1999) (citing cases from the Third, Eighth, and Ninth Circuits, but noting some authority to the contrary).

The district court's error, perhaps, lies in overreliance on Carpenter, supra, 44 F.3d 362. The district court's adoption of language in Carpenter to support its holding that the artful

pleading doctrine could apply irrespective of the lack of complete preemption does not take into account the full reach of the case's language or holding. For instance, the district court focused on a statement in Carpenter that, "[t]he artful pleading doctrine recognizes that the characterization of a federal claim as a state claim will not in all cases prohibit removal when the plaintiff has no state claim at all." Id. at 367. That quote must be read in context. First, Carpenter expressly stated:

> In certain situations where the plaintiff necessarily has available no legitimate or viable state cause of action, but only a federal claim, he may not avoid removal by artfully casting his federal suit as one arising exclusively under state law. Although a defense, preemption may so forcibly *and completely* displace state law that the plaintiff's cause of action is either wholly federal or nothing at all.

Id. at 366 (emphasis added)(citing Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 559 (1968)). Indeed, the district court did not note the next sentence and citation.

> The doctrine does not convert legitimate state claims into federal ones, but rather reveals the suit's necessary federal character. See Franchise Tax Board [v. Construction Laborers Vacation Trust], 463 U.S. [1,] 23 [(1983)] (announcing that this exception to the well-pleaded complaint rule "stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.").

Carpenter specifically noted that the artful pleading doctrine is a "narrow exception," id. at 367, to the well-pleaded complaint rule, and that "[t]he Supreme Court has required that the preemption be complete." Id. at n.2 (citations omitted). Finally,

7

Carpenter observed that "the Supreme Court has clearly sanctioned the [artful pleading] rule only in the area of federal labor relations and the Employee Retirement Income Security Act of 1974. . . ." Id.

In this circumstance, WCS remained the master of its complaint. See Avitts, 53 F.3d at 693. Although WCS *could* have alleged a federal cause of action in its state petition, it did not. It filed a complaint in state court alleging wholly state claims in a non-preempted field. Its choice is entitled to respect and precluded removing the case to federal court absent circumstances not presented here. For certain, we express no opinion as to the viability of WCS's state law claims. That is for a Texas court to decide. The district court's order, issued without jurisdiction, can have no preclusive effect.

### III

Despite improper removal and the district court's error in denying WCS's motion to remand, we must nevertheless confront whether WCS's decision to amend its complaint in federal court to state a claim under the Sherman Act waived this jurisdictional defect.

Jurisdictional defects at time of removal notwithstanding, a final judgment of a federal court may be binding even though the case has been improperly removed, if jurisdiction exists at the time judgment is entered. See Caterpillar, Inc. v. Lewis, 519 U.S. 61, 73 (1996) ("[E]rroneous removal need not cause the destruction

8

of a final judgment, if the requirements of federal subject-matter jurisdiction are met at the time the judgment is entered."); Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972); Kidd v. Southwest Airlines, Co., 891 F.2d 540, 547 (5th Cir. 1990).

To be binding despite improper removal, the plaintiff must voluntarily amend its complaint, and there must be a final judgment on the merits. See Kidd, 891 F.2d at 546. According to Kidd:

> Where the disgruntled party takes full advantage of the federal forum and then objects to removal only after losing at the district court level, that party has waived all objections to removal jurisdiction. Although Kidd initially protested the district court's removal jurisdiction, we find that Kidd's voluntary decision to amend her complaint after the district court denied her motion for remand waived this objection.

Id. (citations omitted). We must decide whether Kidd controls our decision today.

Post-Kidd, the Supreme Court has looked favorably upon a plaintiff's argument that diligent objection renders the waiver doctrine inapplicable. See Caterpillar, 519 U.S. at 72-77. The Caterpillar Court expressly distinguished Grubbs, supra, 405 U.S. at 702, on the basis that it addressed jurisdiction after removal without objection. "The [Grubbs] decision is not dispositive of the question whether a plaintiff, who timely objects to removal, may later successfully challenge an adverse judgment on the ground that the removal did not comply with statutory prescriptions." Caterpillar, 519 U.S. at 73. The Court noted that the plaintiff, "by timely moving for remand, did all that was required to preserve

9

his objection to removal," id. at 74, and held that a plaintiff in this predicament need not seek permission for a 28 U.S.C. § 1292(b) interlocutory appeal in order to preserve the error. Id. Despite this favorable language, the Court ultimately upheld the federal court judgment on the basis that "[o]nce a diversity case has been tried in federal court . . . considerations of finality, efficiency, and economy become overwhelming." Id. at 75.[2] Thus, Caterpillar holds that timely objection can preserve the jurisdictional claim despite subsequent amendment, even if other considerations may ultimately outweigh that objection. See also Hurt v. Dow Chem. Co., 963 F.2d 1142, 1145-46 (8th Cir. 1992) (distinguishing Grubbs on the basis that plaintiff failed to object to removal); Paxton v. Weaver, 553 F.2d 936, 941-42 (5th Cir. 1977). Because Grubbs holds that it is only the non-objecting plaintiff who definitively waives its jurisdictional argument, Grubbs is not applicable.

We also think that there has been no waiver here for at least one other reason. Applying the Kidd elements, in deciding that

---

[2]The Court further stressed that "[t]o wipe out the adjudication post-judgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." Id. at 77. Here, that concern arguably is not implicated. A diversity case differs fundamentally from a federal question case. With a diversity case, a federal court applies state law exactly as would a state court. See, e.g., Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). There is no difference in the treatment of the substance of plaintiff's claims; the change is largely procedural if at all.

waiver is not applicable to WCS, we are greatly influenced because there was no trial on the merits.[3]   Though the reach of the

[3]WCS also objects that its amendment was not voluntary, citing Humphrey v. Sequentia, Inc., 58 F.3d 1238 (8th Cir. 1995), a case in which the district court had found the plaintiff's state law claim to be preempted.  "Thus, the district court presented [the plaintiff] with a Hobson's choice.  Under the circumstances, his options were to amend his complaint to allege the federal LMRA claims or risk dismissal of the complaint and, consequently, preclusion of his federal claims under the doctrine of res judicata."  Id. at 1241.  We note that a similar Hobson's choice argument has not been uniformly accepted.  In Bernstein v. Lind-Waldock Co., 738 F.2d 179, 185 (7th Cir. 1984), Judge Posner persuasively wrote:

> [A]fter Bernstein's motion to remand was denied, he threw in the towel, as it were, and filed an amended complaint in federal court that included an unmistakable federal cause of action against the Exchange.  The amended complaint was thus within the original jurisdiction of the federal district courts and it makes no difference that it was filed only because Bernstein's previous suit had improperly been removed.  If he was convinced that the original action was not removable he could have stuck by his guns and we would have vindicated his position on appeal.  But once he decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there.  Otherwise he would be in a position where if he won his case on the merits in federal court he could claim to have raised the federal question in his amended complaint voluntarily, and if lost he could claim to have raised it involuntarily and to be entitled to start over in state court. He 'cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses.'

(Citing Brough v. United Steelworkers of America, 437 F.2d 748, 750 (1st Cir. 1971)).  In Sigmon, supra, 110 F.3d at 1202-03, we cited this language favorably but without discussion.  Bernstein, though not Sigmon, precedes Caterpillar's apparent approval of the plaintiff's effort to do "all that was required to preserve his objection to removal."  519 U.S. at 74.  As we have noted, Caterpillar preserves for appeal objection to jurisdiction if timely objected to in the first place, and in the absence of other equitable issues.  More important, despite its obvious attraction,

11

expression "trial on the merits" is unclear in this context, we hold that it stops short of a Rule 12(b)(6) dismissal. Although we have defined this phrase to include summary judgments, see Kidd, 891 F.2d at 546; Sigmon v. Southwest Airlines Co., 110 F.3d 1200, 1202 n.6 (5th Cir. 1996), we have not gone further than that. On the same question, sister circuits have expressly held that a "trial on the merits" does not include 12(b)(6) dismissals. See, e.g., Chivas Products, Ltd. v. Owen, 864 F.2d 1280, 1286-87 (6th Cir. 1988)(citing cases from the Fourth, Fifth, Ninth, and Eleventh Circuits), *rev'd on other grounds*, Tafflin v. Levitt, 493 U.S. 455 (1990). In Kidd, we stated that "the 'trial on the merits' requirement comprehends a full bench or jury trial, as well as a summary judgment dismissal." 891 F.2d at 546 (citation omitted). This statement is in accord with the usual rule. See, e.g., Bennett v. Pippin, 74 F.3d 578, 585 (5th Cir. 1996)(differentiating summary judgments with Rule 12(b)(6) motions); Wright & Miller, 5A Federal Practice & Procedure: Civil 2d § 1356 (West 1990) ("The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim; it is not a procedure for resolving a contest about the facts or the merits of the case."). To be sure, the usual course of action upon granting a defendant's Rule 12(b)(6) motion is to allow a plaintiff to amend

---

Judge Posner's language must admit some exception. If it were the firm and fast rule, an amendment of one's complaint after improper removal would always constitute waiver of the jurisdictional argument despite the prerequisite for a judgment on the merits.

his or her complaint, see Foman v. Davis, 371 U.S. 178, 182 (1962), which implies that a plaintiff often may still be able to state a claim if pleaded properly. Without any factual review as applied to the plaintiff's allegations, the "merits" of a plaintiff's case have not been sufficiently addressed for purposes of this issue.

One final consideration that influences our decision (which may be said to stem from the fact that there was no judgment on the merits), is the absence here of the "[overwhelming] considerations of finality, efficiency, and economy," which was compelling for the Court in Caterpillar. 519 U.S. at 75. This case consumed, relatively, a minimum of judicial resources. No hearing was ever held in this matter. In comparison to the three and one-half years of litigation and six-day jury trial in Caterpillar,[4] the district court, in perhaps the overstated words of WCS, granted it, "only eleven days and ten pages to reply to Envirocare's Motion to Dismiss," before it ruled. The few months during which this case improperly resided in federal district court are not comparably overwhelming.

In sum, the doctrine of waiver after improper removal is not applicable on these facts. As WCS timely objected to removal, it

---

[4]Caterpillar's finding of finality, efficiency, and economy considerations was made by analogy to Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989), a diversity case in which the Court stated that "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." Id. at 836. An apparently expedited Rule 12(b)(6) decision hardly is of the same magnitude to either case.

has not waived its objection to that removal despite its subsequent amendment of its claim.[5]

IV

"An order remanding [an improperly removed] case may require payment of just costs and any actual expenses, including attorney fees, incurred as the result of the removal." 28 U.S.C. § 1447(c). Appellant's costs and expenses before this court and the district court were certainly "incurred as the result of the removal." See Avitts v. Amoco Prod. Co., 111 F.3d 30, 32 (5th Cir. 1997). "[O]rdinary litigation expenses that would have been incurred had the action remained in state court are not recoverable. . . ." Id. at 32. Moreover, an award of attorney's fees under § 1447(c) for the plaintiff who plays an "active role . . . in persuading the district court to retain jurisdiction" is inappropriate. Id. at 33. In this case, however, WCS may be said to have taken an opposite position with respect to jurisdiction, despite its amendment. Furthermore, we are persuaded that WCS's attorney's fees in the district court would not have been incurred had the

_____

[5]We also find merit in WCS's position of the narrowness of its amendment. The company filed an amended complaint to state the one and only claim the district court suggested it had, and a claim that was consistent with its state court pleading. In comparison, in Kidd, the plaintiff brought a breach of her employment contract claim in state court. Upon removal to federal court and denial of her motion to remand, plaintiff "amended her complaint to assert breaches of Southwest's employee stock ownership plan and employee profit-sharing plan" under ERISA. 891 F.2d at 542. Thus, the plaintiff added an entirely new cause of action. Such an action speaks to a studied decision to take advantage of the forum once there.

14

action remained in state court. After all, the litigation expense incurred in federal court involved efforts to remand the case to state court and, failing that, WCS amendment of its pleadings to state a federal cause of action and subsequent defense of that position against Envirocare's motion to dismiss. It appears to us that WCS would not have incurred these fees if Envirocare had not improperly removed the case. We therefore conclude that WCS is entitled under the statute to the full costs and expenses, including attorney's fees, incurred in defending against the improper removal and all other action in district court.

V

In sum, we hold that this action was improperly removed to district court and that WCS's motion to remand should have been granted. Furthermore, on the facts of this case, WCS did not waive its jurisdictional argument by amending its complaint in the district court to state a federal cause of action under the Sherman Act. WCS's antitrust cause of action may or may not be able to escape dismissal in state court, but that is not for a federal court to decide.

This district court lacked subject matter jurisdiction over this action. Its orders are therefore VACATED, and the case is REMANDED to the district court with instructions to remand this action to the state court from which it was removed in accordance with 28 U.S.C. § 1447(c) and to award costs and fees to WCS upon submission of proper proof.

15

VACATED and REMANDED.